# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 17-908
Filed: May 23, 2019

|  |  |  |
|---|---|---|
| * * * * * * * * * * * * * | | |
| PATRICIA WOOLF, | * | UNPUBLISHED |
|  | * | |
| Petitioner, | * | |
| v. | * | Decision on Attorneys' Fees and Costs; |
|  | * | Reasonable Basis |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
|  | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | | |

*Richard Gage, Esq.*, Richard Gage, P.C., Cheyenne, WY, for petitioner.
*Darryl Wishard, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On July 5, 2017, Patricia Woolf ("Ms. Woolf," or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleges that she received an influenza ("flu") vaccination on September 24, 2015, which caused her to develop Guillain-Barre Syndrome ("GBS"). Petition ("Pet."), ECF No. 1. Petitioner alleged, in the alternative, that the flu vaccine significantly aggravated her preexisting autoimmune neuropathies. *Id*. Petitioner now seeks an award of attorneys' fees and costs.

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

# I. Background

A.  **Summary of Relevant Medical Records**

On August 31, 2015, petitioner telephoned her primary care provider ("PCP") complaining of a cough and congestion; she was diagnosed with an upper respiratory infection ("URI"). Pet. Ex. 1 at 452-53. On September 8, 2015, petitioner again telephoned her PCP; she reported that she was "getting over her stomach flu symptoms" but still had nausea. *Id.* at 457. She was not experiencing fever, chills, or shakes. *Id.* Her "active problem" list included pelvic pain, gastroesophageal reflux disease, smoking, obesity, psoriasis, and psoriatic arthritis. *Id.* at 457-58. On September 14, 2015, petitioner again telephoned her PCP, reporting that she had stomach flu-like symptoms with nausea, diarrhea, and constipation as well as a head cold. *Id.* at 471-72. She was diagnosed with viral gastroenteritis and advised to continue hydrating and eating a high-fiber diet. *Id.*

On September 17, 2015, petitioner again telephoned her PCP, complaining of coughing and asthma exacerbation. Pet. Ex. 1 at 476. She was advised to stop smoking, and to use her preventative inhaler or Singulair. *Id.* at 477. The next day, September 18, 2015, petitioner presented to her PCP complaining of asthma and worsening allergy symptoms, including dry cough, wheezing, and shortness of breath. *Id.* at 482. She also complained of tingling and numbness in her fingertips and toes for two days. *Id.* She was prescribed nasal spray and advised to use Zyrtec and to continue her current asthma medications. The numbness and tingling in her fingers and toes were attributed to anxiety and overventilation. *Id.*

On September 19, 2015, petitioner presented to the emergency department at Kaiser Permanente Roseville Medical Center ("Kaiser") complaining of a sudden onset of periumbilical pain after coughing. Pet. Ex. 1 at 491. Petitioner reported feeling a hot lump at the painful area and stated that it "felt like [her] stomach exploded." *Id.* at 492. She was diagnosed with an abdominal muscle strain and discharged. *Id.* at 494, 498-501.

On September 21, 2015, petitioner presented to her PCP complaining of generalized all over body pain for two days which was worse with coughing. Pet. Ex. 1 at 511-12. She was diagnosed with new onset uncontrolled hypertension and prescribed lisinopril.[3] *Id.* at 514.

On September 22, 2015, petitioner returned to her PCP complaining that she had vomited multiple times the night before and once that morning. Pet. Ex. 1 at 542. She also complained of a headache that she described as constant and excruciating; it was associated with abdominal pain, nausea, photophobia, visual change, and vomiting. *Id.* at 543. The headache was attributed to her hypertension and recent illness. *Id.* at 545. Petitioner was prescribed ketorolac[4] and ondansetron;[5]

---

[3] Lisinopril is a drug used to treat hypertension. *Lisinopril*, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1065 (32d ed. 2012) [hereinafter DORLAND'S].

[4] Ketorolac, or ketorolac tromethamine, is a non-steroidal anti-inflammatory drug used for short-term management of pain. It can be administered intramuscularly, intravenously, orally, or topically via eye drops. *Ketorolac tromethamine*, DORLAND'S at 984.

[5] Ondansetron HCl, or ondansetron hydrochloride, is a drug used to prevent nausea and vomiting.

she was also given an injection of Toradol[6] for pain. *Id*. at 545-46.

Later that same day, petitioner presented to and was admitted to Kaiser with multiple complaints. She reported an ongoing cough for two weeks as well as headache, hypertension, and myalgias. Pet. Ex. 1 at 570. A urinalysis indicated that petitioner had a urinary tract infection ("UTI"), which was treated with IV ciprofloxacin.[7] *Id*. at 570, 573. A head CT was "essentially normal" and did not indicate a cause for petitioner's headache. *Id*. at 573. Additionally, an MRI venogram was negative for venous sinus thrombosis. *Id*. at 576. Due to a concern for viral meningitis, a lumbar puncture was performed; petitioner had mildly elevated cerebrospinal fluid protein. *Id*. at 574, 665. That same day, she developed right facial paralysis that did not spare her forehead. *Id*. at 576. She also complained of tingling and numbness in both her upper and lower extremities which was worse on the left side. *Id*. at 578. Petitioner was diagnosed with right Bell's palsy and started on steroids and valacyclovir, an antiviral. *Id*. at 576.

At 13:08 on September 24, 2015, petitioner was given a flu vaccine in her left deltoid. Pet. Ex. 1 at 713. She was discharged from Kaiser later that day with instructions to continue on prednisone and antivirals. *Id*. at 576.

On September 25, 2015, petitioner returned to the ER at Kaiser complaining of numbness on the left side of her face and in her right leg, and pain shooting down the right side of her face and right arm. Pet. Ex. 1 at 743. Basic labs were normal. *Id*. at 744. Petitioner was recommended to continue with prednisone and antivirals, and discharged home. *Id*. at 742, 744.

On September 28, 2015, petitioner presented to her PCP for a follow-up after visiting the ER. Pet. Ex. 1 at 776. She reported that her symptoms had not worsened, but they had not improved. *Id*. Petitioner was recommended to follow up with a neurologist. *Id*. at 780.

Later that day, petitioner presented to the ER at Kaiser complaining of persistent headaches, neck pain, bilateral facial weakness, tongue and throat numbness, changes in speech, an unsteady wobbly gait, numbness and pain in her hands and toes, pain in her legs, feet and hands, pain in her neck and spine, and pain down the right side of her body. Pet. Ex. 1 at 794. Petitioner was admitted and later diagnosed with Miller-Fisher variant GBS, which was treated with IVIG. *Id*. at 799, 806-10. She was discharged on October 4, 2015. *Id*. at 799.

**B.     Procedural History**

The petition was filed without any accompanying records on July 5, 2017, and initially assigned to the Special Processing Unit ("SPU"). ECF Nos. 1, 4. Petitioner was ordered to file medical records and a Statement of Completion by July 17, 2017. *See* SPU Initial Order, ECF No. 5. Petitioner filed her medical records and a Statement of Completion on July 17, 2017. *See* Petitioner's Exhibits ("Pet. Ex.") 1-2, ECF No. 7; Statement of Completion, ECF No. 8.

---

*Ondansetron hydrochloride*, DORLAND'S at 1321.

[6] Toradol is a brand name for ketorolac. *Toradol*, DORLAND'S at 1940.

[7] Ciprofloxacin is a broad-spectrum antibiotic. *Ciprofloxacin*, DORLAND'S at 362.

During the initial status conference on August 15, 2017, it was noted that petitioner had not filed complete records for the three years prior to her flu vaccination. Scheduling Order at 1, ECF No. 9. The Court set a deadline of October 16, 2017 for petitioner to file additional medical records and an Amended Statement of Completion. *Id*.

Following two extensions of time, petitioner filed medical records and a Statement of Completion on December 29, 2017. *See* ECF Nos. 10-15. Respondent was ordered to file a status report indicating how he intended to proceed by January 29, 2018. Non-PDF Order, dated Jan. 2, 2018. Respondent filed a status report on January 23, 2018, indicating that he was not amenable to settlement discussions and requesting a deadline for his Rule 4(c) Report. ECF No. 17.

Respondent filed his Rule 4(c) Report ("Resp. Rpt.") on January 25, 2018, recommending against compensation. Resp. Rpt. at 1, ECF No. 18. Respondent noted that petitioner did not qualify for a Table injury claim. *Id*. at 14. Respondent placed the onset of petitioner's GBS on September 16, 2015, eight days before she received the flu vaccine. *Id*. Respondent further suggested that petitioner's GBS was induced by the gastrointestinal and viral illnesses that she suffered from prior to her hospitalization. *Id*. at 15.

This matter was reassigned to me on January 26, 2018. ECF No. 20.

An Order was issued on March 15, 2018, for petitioner to file an expert report by June 12, 2018. ECF No. 23. Petitioner requested and received three extensions of time. *See* Motion, ECF No. 24; Non-PDF Order, dated June 12, 2018; Motion, ECF No. 25; Non-PDF Order, dated July 12, 2018; Motion, ECF No. 26; Non-PDF Order, Sept. 10, 2018.

On October 5, 2018, petitioner filed a status report advising that she had decided not to proceed with her case. ECF No. 27. Petitioner requested that a dismissal decision be issued. *Id*.

A Decision was issued on October 9, 2018, dismissing the petitioner for insufficient proof. ECF No. 28.

On May 7, 2019, petitioner filed a Motion for Attorneys' Fees and Costs. Motion for Fees, ECF No. 32. Petitioner requested attorneys' fees in the amount of $12,649.60, and attorneys' costs in the amount of $1,818.61, for a total amount of $14,468.21. *Id.* at 4. Petitioner's counsel advised that he was unable to contact petitioner regarding her costs but affirmed that petitioner did not incur any out-of-pocket expenses. *Id*. at 46.

On May 8, 2019, respondent filed a response to petitioner's Motion for Fees. Response, ECF No. 32. Respondent deferred "to the Special Master to determine whether the statutory requirements for an award of attorneys' fees and costs (including the reasonable basis requirement) are met in this case." *Id*. at 2.

Petitioner did not file a reply. This matter is now ripe for decision.

4

## II. Applicable Law and Analysis

**A.      Good Faith and Reasonable Basis**

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, he or she is entitled to an award of reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

Good faith is a subjective inquiry that questions whether petitioner's counsel exercised adept professional judgment in determining whether a petitioner may be entitled to compensation. *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014) (citations omitted). In the absence of a showing of bad faith, petitioners in the Vaccine Program are "entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996).

Reasonable basis is an objective standard determined by evaluating the sufficiency of the medical records in petitioner's possession at the time the claim is filed. "Special masters have historically been quite generous in finding reasonable basis for petitions." *Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005).

The Federal Circuit recently denied an award of attorney's fees based on petitioner's lack of reasonable basis in *Simmons v. Secretary of Health and Human Services*. 875 F.3d 632, 636 (Fed. Cir. 2017). In *Simmons*, the Federal Circuit determined that petitioner lacked reasonable basis for filing a claim when, at the time of filing: (1) petitioner's counsel failed to file proof of vaccination, (2) there was no evidence of a diagnosis or persistent injury allegedly related to a vaccine in petitioner's medical records, and (3) the petitioner had disappeared for approximately two years prior to the filing of the petition and only resurfaced shortly before the statute of limitations deadline on his claim expired. *See id.* at 634-35. The Federal Circuit specifically stated that the reasonable basis inquiry is objective and unrelated to counsel's conduct prior to filing a claim. The Court consequently affirmed the lower court's holding that petitioner's counsel lacked reasonable basis in filing this claim based on the insufficiency of petitioner's medical records and proof of vaccination at the time the petition was filed. *Id.* at 636.

In light of *Simmons*, the Court of Federal Claims determined, "[I]n deciding reasonable basis[,] the Special Master needs to focus on the requirements for the petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery. . . Under the objective standard articulated in *Simmons*, the Special Master should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted." *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018). When evaluating a case's reasonable basis, petitioner's "burden [in demonstrating reasonable basis] has been satisfied . . . where a petitioner has submitted a sworn statement, medical records, and [a] VAERS report which show that recovery is feasible." *Id.* In determining reasonable basis, a special master may not consider the statutory limitations deadline or the conduct of counsel but may consider various objective factors including "the factual

basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018).

Respondent did not directly dispute whether there was a reasonable basis for petitioner's claim, but rather deferred to me to determine whether this requirement has been met. Response at 2. Respondent did not raise concerns regarding reasonable basis during the pendency of this claim.

Reasonable basis "looks not at the likelihood of success" but rather "the feasibility of the claim." *Chuisano*, 116 Fed. Cl. at 286. The reasonable basis inquiry is "broad enough to encompass any material submitted in support of the claim at *any* time in the proceeding, whether with the petition or later." *Id*. at 287 (emphasis added). Indeed, a petitioner is not required to file a petition with medical records or an expert report in order to meet the reasonable basis standard. *See McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303 (2011); *see also Carter v. Sec'y of Health & Human Servs.*, 132 Fed. Cl. 372, 382 (2017).

Petitioner received the allegedly causal flu vaccination upon being discharged from Kaiser, where she had been admitted for treatment of new onset Bell's palsy. Within four days of receiving the flu vaccination, petitioner returned to Kaiser with widespread pain and numbness and changes in her speech and gait. Shortly thereafter, she was diagnosed with Miller-Fisher GBS. Petitioner's counsel acknowledged during a status conference that "petitioner had a preexisting evolving autoimmune process and that it was necessary to distinguish that preexisting process from petitioner's claim that the flu vaccine worsened her condition and/or significantly aggravated it." Scheduling Order at 2, ECF No. 23. Petitioners have successfully brought claims in the Vaccine Program for Bell's palsy and Miller-Fisher GBS following flu vaccine. It is feasible that, with support from an expert, a petitioner could successfully claim that a flu vaccine significantly aggravated a preexisting autoimmune process. Accordingly, I find that there was a reasonable basis for petitioner to bring her claim at the time of filing.

This claim maintained reasonable basis until petitioner was unable to obtain an expert to opine in support of her claim. When petitioner's counsel could not obtain an expert report in support of this claim, he helped petitioner to dismiss her claim. The attorneys' fees incurred after this matter lost reasonable basis were related to "wrapping up" this case and therefore counsel should be compensated. *See, e.g., Swick v. Sec'y of Health & Human Servs.*, No. 13-526V, 2018 WL 6009290, at *6 (Fed. Cl. Spec. Mstr. Oct. 22, 2018) (Finding that petitioners' counsel "should be compensated for a short amount of time used to wrap up the case").

### B.     Reasonable Hourly Rate

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum

6

hourly rate. *Id*. This is known as the *Davis County* exception. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Petitioner has requested the following hourly rates for the attorneys who performed work on this case: for Richard Gage, $311 for work performed in 2016, $318 for work performed in 2017, $326 for work performed in 2018, and $338 for work performed in 2019; for Kristen Blume, $251 for work performed in 2018; and for Kristen Rieman, $200 for work performed in 2017. The rates requested for Mr. Gage and Ms. Blume are consistent with rates previously awarded to these attorneys. *Hendrickson v. Sec'y of Health & Human Servs.*, No. 15-812V, 2018 WL 6822351, at *7 (Fed. Cl. Spec. Mstr. Nov. 26, 2018) (Finding appropriate hourly rates for Mr. Gage); *Desai v. Sec'y of Health & Human Servs.*, No. 14-811V, 2018 WL 6819551, at *6 (Fed. Cl. Spec. Mstr. Nov. 27, 2018) (Awarding an hourly rate of $251 to Kristen Blume for work performed from 2017 to 2018). However, other special masters have found that an appropriate rate for Ms. Rieman is $150. *See Pember v. Sec'y of Health & Human Servs.*, No. 15-1005V, 2018 WL 3989514, at *2 (Fed. Cl. Spec. Mstr. June 28, 2018); *Briggs v. Sec'y of Health & Human Servs.*, No. 15-737V, 2018 WL 3991261, at *4 (Fed. Cl. Spec. Mstr. June 27, 2018). Ms. Rieman will be awarded an hourly rate of $150 in keeping with these well-reasoned decisions.

Petitioner has requested an hourly rate of $120 for paralegals Brian Vance, Susan McNair, and Helen Nelson for work performed from 2016 through 2019, which is consistent with previously awarded hourly rates for Mr. Gage's paralegals. *See Desai*, 2018 WL 6819551, at *6. Accordingly, I find the requested rates reasonable.

Based on the above, petitioner's attorneys' fees are reduced by $5.00 to $12,644.60.

### C.      Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that,

in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of petitioner's application, the undersigned finds that the billing records contain entries that are "excessive, redundant, or otherwise unnecessary," or are billed at excessive rates for the task. *Saxton*, 3 F.3d at 1521.[8] Despite several warnings from other special masters, Mr. Gage's firm continues to bill for excessive interoffice communication.[9] *See, e.g., Taylor v. Sec'y of Health & Human Servs.*, No. 15-1346V, 2019 WL 1376039, at *4 (Fed. Cl. Spec. Mstr. Mar. 1, 2019); *Mack v. Sec'y of Health & Human Servs.*, No. 15-149V, 2017 WL 5108680, at *5 (Fed. Cl. Spec. Mstr. Sept. 28, 2017). Accordingly, I find that petitioner's attorneys fees should be reduced by 10%, from $12,644.60 to $11,380.14.

D.     **Reasonable Costs**

Petitioner requested a total of $1,818.61 in attorneys' costs. Motion for Fees, ECF No. 31. The requested costs consist of the $400.00 filing fee, $65.35 in costs associated with obtaining medical records, and $1,328.40 in copying costs. *Id*. at 37-44. The undersigned finds petitioner's requested costs to be reasonable.

### III. Total Award Summary

Based on the foregoing, the undersigned **awards the total of $13,198.75**,[10] representing reimbursement for attorneys' fees in the amount of $11,380.14 and costs in the amount of $1,818.61, in the form of a check made payable jointly to petitioner and petitioner's counsel, Richard Gage, Esq. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[11]

---

[8] The following entries are examples and are not exhaustive; they merely provide a sampling.

[9] *See* Motion for Fees, ECF No. 32, at 7, 8, 9, 10, 12 (Mr. Gage, Mr. Vance, and Ms. McNair each billed for "Office meeting, discussion of current status of case and assigned tasks" on April 10, 2017; October 27, 2017; February 2, 2018; March 16, 2018; and September 26, 2018).

[10] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master
